IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| DENISE L. LYNCH, )<br>    *pro se* Plaintiff, )<br>)<br>v. )<br>)<br>NANCY BERRYHILL,[1] )<br>Acting Commissioner of Social Security, )<br>    Defendant. )<br>_____) | Civil Action No. 3:16cv596 (HEH) |

## REPORT AND RECOMMENDATION

On October 19, 2012, Denise Lynch ("Plaintiff") filed for Social Security Disability Benefits ("DIB") and for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from multiple sclerosis ("MS"), obesity and hypertension, with an alleged onset date of October 1, 2011. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff, proceeding *pro se*, now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in assessing her residual functional capacity ("RFC"), in assessing the severity of her depression, and that additional evidence not submitted to the ALJ warrants remand. (Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF NO. 13) at 1); (Pl.'s

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this matter.

Opp'n To Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") (ECF No. 16) at 2-3.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter now ripe for review.[2] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On October 19, 2012, Plaintiff protectively filed an application for DIB and SSI with an alleged onset date of October 1, 2011. (R. at 187, 196, 212.) The SSA denied these claims initially on December 11, 2012, and again upon reconsideration on July 3, 2013. (R. at 79, 93). At Plaintiff's written request, the ALJ held a hearing on September 10, 2014. (R. at 30-59, 136.) On October 28, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because she could perform her past relevant work. (R. at 22-24.) On February 22, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 6-8.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will "affirm the [SSA]'s disability determination 'when an ALJ has applied correct legal standards and the ALJ's

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

2

factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental limitations. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On September 10, 2014, the ALJ held a hearing during which Plaintiff (then-represented by counsel) and a vocational expert ("VE") testified. (R. at 30.) On October 28, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 15-24.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 16-17.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. at 17.) At step two, the ALJ determined that Plaintiff had the following severe impairments: multiple sclerosis, obesity and hypertension. (R. at 17.) At step three, the ALJ found that Plaintiff did not

have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments. (R. at 18-19.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform sedentary work with additional limitations. (R. at 19.) She could only lift five pounds frequently and ten pounds occasionally. (R. at 19.) She could sit for six hours and stand/walk for two hours in an eight-hour workday, but would need to rest for ten minutes every two hours. (R. at 19.) Plaintiff could not climb ladders, ropes or scaffolds. (R. at 19.) She could only occasionally crouch, crawl, kneel, stoop, bend or climb ramps and stairs. (R. at 19.) Additionally, she could never tolerate heights or operate hazardous machinery. The ALJ also noted that Plaintiff used a walker for balance and ambulation. (R. at 19.) Finally, Plaintiff would miss ten workdays a year due to her impairments. (R. at 19.)

Based on her RFC, the ALJ determined at step four that Plaintiff could perform her past relevant work as a data entry clerk, payroll clerk and billing specialist. (R. at 22.) Therefore, she did not qualify as disabled under the Act. (R. at 23.)

## IV. ANALYSIS

Plaintiff, sixty-one years old at the time of this Report and Recommendation, previously worked as an administrative assistant, billing specialist, overpayment analyst and sales associate. (R. at 60, 226.) She applied for Social Security benefits, alleging disability from MS, obesity and hypertension, with an alleged onset date of October 1, 2011. (R. at 17, 60, 216.) Plaintiff's appeal to this Court alleges that the ALJ erred in not finding her depression severe and in assessing her RFC. (Pl.'s Mem. at 1); (Pl.'s Opp'n at 2-3). Additionally, Plaintiff alleges that

5

new evidence that she submitted after the ALJ's decision warrants remand.[3] (Pl.'s Mem. at 1.) For the reasons set forth below, the ALJ did not err in his decision.

### A. The ALJ did not err in assessing Plaintiff's RFC.

Plaintiff first argues that the ALJ erred in assessing her RFC, because her MS limits her more than the RFC reflects. (Pl.'s Mem. at 1.) Defendant responds that substantial evidence supports the ALJ's decision. (Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 14) at 10-11.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(1). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of a claimant's physical limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. § 416.945(b). Generally, the claimant shoulders the responsibility for providing the evidence that the ALJ utilizes in making his RFC determination; however, before determining that a claimant does not have a disability, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. § 416.945(a)(3). The RFC must incorporate impairments that have basis in the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e).

Social Security ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

---

[3] Plaintiff's sparse pleadings primarily restate her belief that her limitations preclude her from working, but she does not assign any particular error to the ALJ's decision. (Pl.'s Mem. at 1.) Giving her pleadings deference, the Court will construe her pleadings as an attack on the RFC and the ALJ's failure to consider her depression as severe at step two. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (internal quotations omitted).

6

function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996), at *5). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p, at *7).

Here, the ALJ included a comprehensive review of the evidence supporting his RFC assessment. The ALJ considered the records from Plaintiff's emergency room visits in 2011, 2012 and 2013. (R. at 20-21.) These included CT scans, MRIs and examination results. (R. at 20-21.) The ALJ noted that several of Plaintiff's hospitalizations for dizziness resulted from dehydration. (R. at 20-21.) The ALJ found that Plaintiff's MS had produced exacerbations, but during neurological exams she exhibited normal gait, normal muscle strength and normal sensation with only some slower alternating movements on the left side. (R. at 21.) The ALJ considered Plaintiff's use of a walker. (R. at 21.) Despite Plaintiff's complaints of weakness and fatigue, the ALJ noted that Plaintiff could take care of herself independently. (R. at 21-22.)

The ALJ also considered the opinions of state agency medical consultants. (R. at 22.) He gave their opinions that Plaintiff could perform light work limited weight, because they did not have the opportunity to observe Plaintiff or the evidence that she submitted after they reviewed the record. (R. at 22.) Instead, he assessed a more restrictive RFC. (R. at 22.) The ALJ relied on Plaintiff's daily activities, the objective medical findings and the routine nature of her medical care in assessing her RFC. (R. at 20-22.) Substantial evidence supports the ALJ's assessment of Plaintiff's RFC.

Plaintiff's medical records support the ALJ's findings. On October 30, 2011, Plaintiff reported to Bon Secours' emergency department after fainting at a flea market. (R. at 374.) She

7

complained of fatigue. (R. at 374.) Patrick Oliver, M.D., assessed her with near syncope and attributed it to dehydration and hypokalemia. (R. at 374, 377.) On physical exam, she exhibited no musculoskeletal or neurological problems. (R. at 376.) Specifically, she exhibited no gait disturbance, memory loss, paresthesia or focal weakness. (R. at 379.) An echo and CT scan yielded unremarkable results. (R. at 386.) Plaintiff received treatment for her acute renal failure before her discharge. (R. at 386.)

On June 22, 2012, Plaintiff presented to the emergency department at VCU Health Systems after another fainting spell. (R. at 475.) Alexandra Newhook, M.D., assessed the onset of the altered mental status as moderate and the degree at the present time as minimal. (R. at 475.) Dr. Newhook attributed the fainting to Plaintiff working in the heat. (R. at 475.) On examination, Plaintiff again exhibited normal musculoskeletal and neurological signs. (R. at 476.)

On July 20, 2012, Plaintiff returned to the emergency room at VCU Health Systems after hitting her head in a fall. (R. at 452.) She could not explain why she fell, but denied tripping, syncope, near syncope, changes in her vision, weakness or an unstable gait. (R. at 452.) On examination, Daniel Fitzgerald, M.D., observed no focal neurological deficit or any other acute distress. (R. at 453.) Plaintiff denied any loss of consciousness, visual changes, sensation of vertigo, weakness or numbness. (R. at 457.) Nathan Lewis, M.D., observed Plaintiff ambulating around the emergency department without difficulty or symptoms. (R. at 457.) Dr. Lewis could not pinpoint a cause for her fall. (R. at 457.)

On August 30, 2012, Plaintiff again presented to the emergency department, this time at Chippenham Johnston-Willis, complaining of dizziness, headaches and nausea. (R. at 499.) Melvin Pelgram, M.D., assessed her symptoms as likely secondary to uncontrolled hypertension.

(R. at 499.) On exam, she exhibited no neurological abnormalities. (R. at 502.) An MRI of her brain revealed white matter lesions suggesting demyelinating disease, which a lumbar puncture confirmed the next day. (R. at 499, 530, 535.) That same day, Plaintiff consulted with Dreama Brar, M.D. (R. at 505.) Plaintiff complained of not feeling right, but denied weakness, numbness, tingling and vision problems. (R. at 505.) Dr. Brar made normal neurological observations. (R. at 506.) Dr. Brar ordered an additional MRI and the lumbar puncture. (R. at 506.)

On October 3, 2012, Plaintiff visited Dr. Brar, who confirmed that Plaintiff had MS. (R. at 565-66.) Plaintiff denied any back pain or joint pain. (R. at 565.) Plaintiff exhibited normal vision, facial sensation and strength, hearing, muscle strength, coordination and reflexes. (R. at 566.) She displayed a slight wide-based gait. (R. at 566.) Dr. Brar prescribed Avonex and instructed Plaintiff to return in one month. (R. at 566-67.)

On November 2, 2012, Plaintiff returned to Dr. Brar for a follow-up visit. (R. at 563.) Plaintiff had received three injections of Avonex and had tolerated them well. (R. at 563.) Although Plaintiff reported that she occasionally experienced a gait imbalance, she denied any weakness, numbness or tingling. (R. at 563.) On exam, Dr. Brar found Plaintiff with normal muscle strength, tone and bulk. (R. at 564.) Plaintiff displayed a normal gait and reflexes. (R. at 564.) Dr. Brar recommended that Plaintiff continue taking Avonex and return in four months for a follow-up. (R. at 564.)

On April 11, 2013, Plaintiff first visited Jonathan Bekenstein, M.D., at VCU Health Systems to evaluate her MS. (R. at 664.) On examination, Plaintiff had intact coordination and a normal gait. (R. at 667.) She exhibited 5/5 muscle strength and normal muscle tone and bulk. (R. at 666.) Dr. Bekenstein described Plaintiff's neurological exam as unremarkable. (R. at

9

667.) He also described Plaintiff's exam as unremarkable with regard to vision, speech, strength, sensation and balance. (R. at 668.) Dr. Bekenstein determined that Plaintiff "most likely" had MS, but ordered more testing to confirm the diagnosis. (R. at 668.)

On June 6, 2013, Plaintiff presented to the emergency department at VCU Health Systems. (R. at 681.) She complained of dizziness while working in her shed. (R. at 681.) Christopher Thom, M.D., diagnosed her with near syncope, dehydration and dizziness. (R. at 696, 698.) On examination, she exhibited normal musculoskeletal signs. (R. at 683.) She exhibited no focal neurological deficit and displayed normal motor signs. (R. at 683.) She stayed two nights at the hospital and received treatment for dehydration. (R. at 683-90.)

During her stay, the neurology department examined her. (R. at 718.) She complained of a headache but denied any confusion, numbness or joint pain. (R. at 720.) She exhibited 5/5 motor strength and normal muscle bulk and tone. (R. at 721.) She had intact coordination. (R. at 722.) The attending doctor opined that "[a] lot of her weakness was effort based on my exam." (R. at 722.) The doctor had a low suspicion for MS exacerbation. (R. at 722.) The neurology department recommended no change in her treatment and advised against starting steroids. (R. at 690, 722.) Plaintiff reported doing better on June 8, and the hospital discharged her. (R. at 690.)

Plaintiff also received a physical therapy consultation during her hospital stay. (R. at 724.) She complained of fatigue and lightheadedness throughout the consultation. (R. at 724-25.) Jenna Huffard, PT, discussed the use of a walker with Plaintiff, but she resisted. (R. at 726.)

On July 8, 2013, Plaintiff again presented to the emergency department at VCU, complaining of generalized weakness. (R. at 847.) She had run out of her Effexor two days

10

earlier. (R. at 847.) On examination, Joseph Walsh, NP, assessed her motor, sensory, speech and coordination as normal. (R. at 849.) He observed no neurological deficit. (R. at 849.) Plaintiff exhibited normal range of motion and normal strength. (R. at 849.) The hospital discharged her the next day without determining a cause for her weakness. (R. at 851, 855.)

On November 8, 2013, Plaintiff presented to the emergency department at Henrico Doctors' Hospital, complaining of chest pain and weakness. (R. at 782.) Although Plaintiff later reported staying in the hospital for five days, the records demonstrate a normal physical and neurological exam. (R. at 785, 804.)

On December 19, 2013, Plaintiff returned to Henrico Doctors' Hospital for chest pain. (R. at 775.) Again, she had a normal physical exam, although she appeared depressed and lethargic. (R. at 778.)

On February 17, 2014, Plaintiff presented to the neurology department at VCU Health Systems for a follow-up visit. (R. at 834.) Zhi-Jian Chen, M.D., conducted a neurological exam with unremarkable findings. (R. at 836, 839.) Plaintiff exhibited 5/5 motor strength, normal muscle tone and bulk, and had no musculoskeletal complaints. (R. at 835, 837.) She had intact coordination and a normal gait. (R. at 838.) Dr. Chen continued Plaintiff on Avonex and instructed her to return in six months. (R. at 839.)

The above medical records stemming from Plaintiff's visits to the emergency room support the ALJ's decision. Despite complaints of dizziness or fatigue, Plaintiff regularly displayed no abnormalities on physical or neurological examinations. In reviewing the above records, the ALJ noted that Plaintiff had experienced some possible exacerbations from MS. (R. at 21.) However, she had normal neurological exams through February 2014. (R. at 21.)

11

Plaintiff's reported activities further support the ALJ's decision. On November 21, 2012, Plaintiff completed a function report. (R. at 243-50.) She reported that she read, made her bed, washed herself, ate, cleaned and sometimes went out. (R. at 243.) Plaintiff reported having no problems caring for herself or remembering to take care of personal needs or take medications. (R. at 244-45.) She prepared her own complete meals and reported no change in her ability to cook. (R. at 245.) She could clean and do laundry without help, but she completed no outside chores, because she did not own the property. (R. at 245-46.) Going outside daily, Plaintiff could walk, drive or use public transportation. (R. at 246.) She reported that bowling and dancing became more challenging since her illness began. (R. at 247.) Plaintiff reported no problems with her attention span or ability to follow instructions. (R. at 248.)

On June 24, 2013, Plaintiff completed another function report. (R. at 262-69.) Plaintiff reported living alone and that she could read, bathe, cook, sleep, watch TV, clean, exercise at times and go outside. (R. at 262.) She reported trouble sleeping because of the pain, but she had no problems caring for herself. (R. at 263.) She cooked full meals for herself every day. (R. at 264.) Again, she could complete basic indoor chores but no outside chores. (R. at 264.) For her almost daily outings, she used public transportation or rode in a car. (R. at 265.) She did not drive, because she did not have her own car. (R. at 265.) She again reported a decrease in her ability to bowl or dance. (R. at 266.) She reported a loss of strength in her hands, legs and arms. (R. at 267.) Unlike the first function report, she reported using a walker. (R. at 268.) She had no issues with concentration or following instructions. (R. at 267.)

Plaintiff's testimony during the hearing also supports the ALJ's decision. Plaintiff testified that she used a walker in her house but not outside of it. (R. at 38.) Plaintiff lived by herself. (R. at 39.) She could complete household chores, but at a slower pace. (R. at 44-46.)

She claimed that she tired easily and experienced weakness in her left arm. (R. at 46-48.) She went to the store and to church, but did not drive herself. (R. at 44.) Plaintiff's last employment ended due to transportation issues. (R. at 42-43.)

Plaintiff's objective medical records, her routine care and her daily activities support the ALJ's decision that her MS did not preclude her from performing sedentary work. The ALJ reviewed all of the relevant evidence and explained how it supported the RFC. Because substantial evidence supports the ALJ's decision with respect to Plaintiff's RFC, he did not err.

### B. The ALJ did not err by labeling Plaintiff's depression as non-severe.

Plaintiff also argues that the ALJ erred by not considering her disabled due to her depression. (Pl.'s Opp'n at 2-3.) The ALJ considered Plaintiff's depression at step two, but did not include it in her severe impairments. (R. at 17-18.)

At the second step of the ALJ's sequential analysis, a plaintiff must prove that she has a "severe impairment . . . or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2012). Under the Act, a severe impairment entitling one to benefits must cause more than a minimal effect on one's ability to function. §§ 404.1520(c), 404.920(c) (2012). Likewise, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [Plaintiff's] physical or mental ability to do basic work activities." §§ 404.1521(a), 404.921(a) (2015).

The regulations require the ALJ to find the plaintiff not disabled at step two if she "do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." § 404.1520(a)(4)(ii). Section 1509 requires that the plaintiff's impairment "must have lasted or be expected to last for a continuous period of at least 12

13

months." §§ 404.1509. The plaintiff bears the burden of demonstrating that an impairment qualifies as severe. *Bowen v. Yuckert*, 482 U.S. 137, 146, 148 (1987).

When evaluating a claimant's mental impairments at steps two and three, the ALJ must follow the special-technique outlined in the regulation. 20 C.F.R. §§ 404.1520(a), 416.920(a) (2012); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Under the special-technique regulation, if the ALJ determines that a mental impairment exists, he "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [her] findings." *Patterson*, 846 F.3d at 659. The ALJ must also document a specific finding as to the degree of limitation in each of the four areas of functional limitation: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and, (4) episodes of decompensation. *Id.* The ALJ must determine whether the claimant suffers from a severe mental impairment. *Id.* If a severe impairment does not qualify as a listed impairment, "the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Id.*

Here, the ALJ assessed the severity of Plaintiff's depression. (R. at 18.) He reviewed the medical records and found them lacking for any psychiatric or psychological examinations. (R. at 18.) The ALJ noted that Plaintiff's depression had been noted as part of her medical history during her hospitalizations and doctors' visits. (R. at 18.) However, these records lacked any additional information regarding related signs, symptoms or limitations. (R. at 18.) Additionally, the ALJ looked at Plaintiff's admitted capabilities. (R. at 18.) The ALJ also gave great weight to the state agency psychological consultants. (R. at 18.) The ALJ concurred in their assessment that Plaintiff did not have any severe mental impairments, based on the findings with respect to the four areas of functional limitation. The ALJ concluded that Plaintiff: (1) had

14

no restrictions of her activities of daily living; (2) had no restrictions of her social functioning; (3) had no more than mild difficulties maintaining concentration, persistence or pace; and (4) had no episodes of decompensation. (R. at 18.) The ALJ followed the special-technique in considering Plaintiff's depression, and substantial evidence supports his determination.

The records from Plaintiff's primary care physicians support the ALJ's decision. Throughout 2012 and into 2013, notes from Hope Haffizulla, M.D., and Nelson Chen-Fernandez, M.D., indicate that Plaintiff appeared alert and oriented. (R. at 577, 579, 596, 598, 603, 742, 744, 746, 748, 750, 753, 797, 799, 801, 804, 806, 808, 810, 812, 814.) None of the records indicate any abnormal psychiatric observations. Plaintiff's doctors assessed her with depression during some of her visits, (R. at 580, 583, 585, 587-88), but did not include depression in the assessment during other visits. (R. at 578, 589-90, 596, 598, 600, 743, 745-46, 749, 751, 753.)

On August 14, 2012, Dr. Haffizulla assessed Plaintiff with a depressive reaction. (R. at 587.) However, the record contains no other information or objective findings regarding her psychiatric conditions. (R. at 587.) Then, on October 10, 2012, Dr. Chen-Fernandez prescribed Effexor for her depression. (R. at 580.) But, again, this record contains no other psychiatric findings. (R. at 579-80.) On November 15, 2012, and during all of Plaintiff's appointments through June 19, 2013, Dr. Chen-Fernandez did not assess Plaintiff with depression, but he did continue her on Effexor. (R. at 578.) Thereafter, during all of her visits through the last available record on April 17, 2014, Dr. Chen-Fernandez did not assess Plaintiff with depression. (R. at 743, 745, 746, 749, 751, 753, 795, 798, 800, 802, 805, 807, 809, 810, 813, 815.)

Plaintiff's records stemming from her emergency room visits also support the ALJ's decision to label her depression as non-severe. During Plaintiff's October 30, 2011 hospitalization, Dr. Oliver observed Plaintiff with a normal mood, affect, behavior and thought

content. (R. at 376.) A review of her symptoms found her negative for anxiety, depression and agitation. (R. at 379.)

On June 22, 2012, Plaintiff appeared cooperative with an appropriate mood and affect when she presented to the emergency room. (R. at 476.) Likewise, during Plaintiff's July 20, 2012 visit to the emergency department, Dr. Fitzgerald and Dr. Lewis both observed Plaintiff as cooperative with normal judgment and an appropriate mood and affect. (R. at 454, 457.) On Plaintiff's subsequent trips to the emergency department, as detailed above, she exhibited normal psychiatric characteristics. (R. at 506, 682-83, 786, 818, 825-26, 847, 849.)

Moreover, during a neurological exam on October 3, 2012, Plaintiff denied depression and anxiety. (R. at 566.) On examination, Dr. Brar found her oriented, awake and alert. (R. at 566.) She had intact recent memory and remote memory with a normal fund of knowledge. (R. at 566.) Dr. Brar made identical observations during a follow-up visit on November 2, 2012. (R. at 564.)

Likewise, on April 11, 2013, Plaintiff visited Dr. Bekenstein in the neurology department at VCU Health Systems. (R. at 664.) Plaintiff denied any psychiatric problems. (R. at 665.) On exam, Dr. Bekenstein found Plaintiff alert, oriented, cooperative and interactive. (R. at 666.) She exhibited a normal fund of knowledge and fluent speech. (R. at 666.) Plaintiff could follow commands, and she could perform simple calculations. (R. at 666.)

The opinions of the state agency psychologists further support the ALJ's decision. On December 10, 2012, Stephen Saxby, Ph.D., assessed Plaintiff's depression as non-severe. (R. at 64-65.) He opined that it caused her no restrictions in activities of daily living, no difficulties in maintaining social functioning, no more than mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (R. at 65.) On July 3, 2013, Hillery

16

Lake, M.D., made identical findings. (R. at 89, 102-03.) The ALJ gave these opinions great weight. (R. at 18.)

Finally, Plaintiff's admitted activities support the ALJ's conclusion that she does not suffer from severe depression. Plaintiff lived alone and could read, watch TV, complete chores around the house and cook full meals. (R. at 243-45, 262-64.) She had no problems with her attention span or ability to follow directions. (R. at 248, 267.) Plaintiff reported that she could pay bills, count change, handle a savings account and use a checkbook. (R. at 246, 265.) Plaintiff spent time with others and went to the store and to church. (R. at 44, 247, 266.) She reported that she liked to bowl and dance, but that her MS kept her from participating in these activities as much as she liked. (R. at 247, 266.)

In conclusion, Plaintiff has not met her burden of showing that her depression "significantly limit[s] [her] . . . mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2012). The normal psychiatric findings during Plaintiff's doctors' visits, the conclusions of the state agency psychological consultants, and Plaintiff's admitted abilities all support the ALJ's decision to label Plaintiff's depression as non-severe at step two.

### C. Plaintiff has not submitted new evidence that warrants remand.

Plaintiff argues that a psychiatric report that she submitted after the ALJ's decision warrants remand.[4] (Pl.'s Mem. at 1.) The evidence that Plaintiff submitted with her Complaint contains only two reports that Plaintiff could be referring to: (1) an April 1, 2016 letter (the "Letter") (ECF No. 3-3) from the Director of Clinical Services at the VCU Medical Center Department of Psychiatry; or, (2) a February 6, 2015 treatment record from VCU Health's

---

[4] Plaintiff did not submit a psychiatric report to the Appeals Council, but she did submit additional evidence with her Complaint. (R. at 10; Compl. (ECF No. 3).)

17

Psychotherapy Outpatient Clinic (the "Treatment Record") (ECF No. 3-5, at 11-15). The Court will address both to determine if either warrants remand.

A court may remand on the basis of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The evidence must meet four requirements: (1) the new evidence must relate to the period before the ALJ's decision; (2) the new evidence has a material effect on the outcome; (3) there exists good cause for the claimant's failure to submit the new evidence before the ALJ; and (4) the plaintiff must make a general showing of the evidence. *Borders v. Heckler*, 777 F.2d 954, 954-55 (4th Cir. 1985), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991); *Brown v. Comm'r of Soc. Sec.*, 2010 WL 2787898, at *7 n.5 (E.D. Va. June 21, 2010) (noting that the Fourth Circuit continues to cite *Borders* as the standard for new evidence); *Washington v. Comm'r of Soc. Sec.*, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009) (applying the *Borders* four-part test to new evidence).

Here, both the Letter and the Treatment Record fail to relate back to the time period before the ALJ's decision. The ALJ decided this case on October 28, 2014. (R. at 29.) The three-sentence Letter merely states that Plaintiff began treatment for Major Depressive Disorder, recurrent, moderate at the clinic beginning on February 16, 2015. (Letter at 1.) It gives no other details and no indication that Plaintiff had any limitations then or before October 28, 2014. Therefore, it did not relate back to the period before the ALJ's decision, nor could it have changed the outcome of the case. Therefore, it does not constitute new or material evidence that warrants remand.

The Treatment Record does not warrant remand for similar reasons. First, it does not relate back to the period before the ALJ's decision. On February 6, 2015, Plaintiff presented to Awtar Rathore, DO, for an initial therapy visit. (Treatment Record 11.) In the "Past Psychiatric History" section, Dr. Rathore noted that Plaintiff had not had any previous psychiatric hospitalizations or suicide attempts. (Treatment Record at 11.) During a mental status exam, Plaintiff expressed a depressed subjective mood. (Treatment Record at 13.) However, she appeared alert with a cooperative attitude. (Treatment Record at 13.) She exhibited no acute behaviors and maintained good eye contact. (Treatment Record at 13-14.) She demonstrated relevant, coherent speech and spontaneous, linear, logical and goal-directed thought process. (Treatment Record at 14.) Her concentration, judgment and insight all remained intact. (Treatment Record at 14.) Dr. Rathore believed that Plaintiff suffered from Major Depressive Disorder, recurrent, moderate and unspecified anxiety disorder. (Treatment Record at 14.)

This Treatment Record gives no indication that Plaintiff suffered from limitations before that particular visit or before the time of the ALJ's decision six months before. Therefore, Plaintiff cannot show that it relates back. Additionally, the Treatment Record does not conflict with the records that the ALJ considered. Plaintiff had an unremarkable mental status exam, similar to her trips to the emergency department. (Treatment Record at 13-14.) Therefore, it would not have changed the ALJ's step determination. As such, it lacks materiality. The Treatment Record cannot establish the basis for a remand.[5]

---

[5] To the extent that Plaintiff alleges that this evidence indicates a worsening of her alleged symptoms after the ALJ's decision, she may file a new application for benefits. 20 C.F.R. §§ 404.620(a)(2), 416.330(b) (providing that if an applicant meets the requirements for disability after the period in which her application was in effect, she must file a new application). In fact, Plaintiff indicated that she has recently been approved for SSI benefits. (Addendum to Compl. (ECF No. 3-1).)

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge Henry E. Hudson, to all counsel of record, and to *pro se* Plaintiff at her address of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: July 5, 2017